### Ed Gardner v. The State.

#### No. 4666. Decided October 31, 1917.

**Assault With Intent to Rape—Insanity—Motion for New Trial.**

Where defendant was convicted of assault with intent to rape and had no attorney to represent him on the trial and made no claim that he was insane at the time of the commission of the offense, or that it was impossible for him to have had such intercourse with the female in question, etc., but an attorney was afterwards employed by others who, in his motion for new trial, alleged that defendant was insane at the time of the commission of the offense, and his sexual inability to commit said offense, etc., and proffered testimony to prove these facts, which the judge refused to hear, but tendered defendant a jury to try the issue of insanity under the statutes as provided after the conviction, the same was reversible error, and the court should have heard the testimony, and if the facts were found true to have granted a new trial.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of assault with intent to rape; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, Judge.—Appellant was convicted of an assault to rape a very young little girl, and his punishment assessed at seven years confinement in the penitentiary.

The record shows that appellant had no attorney to represent him on the trial.

There was no claim on the trial that appellant was insane either at the time of the commission of the offense, if one was committed, or at the time of the trial. Neither was there any claim or evidence on the trial that appellant, by reason of previous disease and his advanced age, had lost his manhood, and it was impossible for him to have had sexual intercourse; or that it was a physical impossibility for him to have had an emission. Just after the trial, and his friends and relatives learned thereof, it seems, they employed an attorney who at once conferred with the trial judge, telling him that appellant was insane at the time of the commission of the offense, if any, and at the time of the trial, and of his sexual inability, and he claimed that all these facts were newly discovered testimony. The judge thereupon suggested to the attorney that he file his motion for a new trial setting up by affidavits his claimed

newly discovered testimony. The attorney at once filed such motion, alleging that such were the facts, and swore to it himself. He attached three affidavits, one of a physician, and another of appellant's former wife, in which it is briefly but specifically sworn that his condition, physical and mental, was as alleged by his attorney. There was no contest or counter affidavits filed by anyone.

When the motion came on to be heard, in addition to the affidavits attached to the motion, his attorney produced some twelve witnesses and tendered them to the court to be sworn and testify orally to prove what he had alleged. We will here copy in full what he offered to prove by two of these witnesses. By Dr. S. M. Hill:

"That said witness resides in the City of Dallas; that he is a member of the firm of doctors—Samuel, Thomasson, Hill & Trumbull. That he is a physician of large experience. That he has resided in Dallas for several years in the active practice of his profession. That he is intimately acquainted with the defendant and has been his physician for several years. That the defendant has always borne a most estimable reputation; that he knows the condition of the defendant, both physically and mentally, and has known it for a long time. That he has examined the defendant professionally, and from such examination he will state that it was a physical impossibility for the defendant to have had an erection, emission or discharge at the time of the alleged commission of the crime of which he now stands convicted of. That he visited defendant professionally while he was in jail, just a few days before his trial, and made an examination of him, and from that examination and other examinations, and his personal and intimate relations and long acquaintance with the defendant, he is in a position to state and will state that the defendant was insane at the time of the alleged commission of the crime for which he stands convicted, and that he was insane at the time of his trial. That defendant at the time of his trial was mentally incapable of making a rational defense. That at the time he visited the defendant just before his trial, as aforesaid, he found defendant greatly depressed and mentally unbalanced. That his eyes were expressionless, and that his answers to questions propounded to him were vague and rambling, and that he talked and acted like a child. That defendant is over seventy years of age, broken in health, feeble, childish and harmless."

By Mrs. Mattie Devere, as follows: "That said witness resides in Dallas. That she is the daughter of Judge W. C. Loving, deceased, late of Sulphur Springs, Texas. That she married the defendant in the year 1882 and lived with him as his wife until about three years ago, when she was divorced from defendant, on account of his physical and mental condition. That since said divorce she married again, and her husband is now dead. That she lived with defendant as aforesaid for thirty-two years, during which time she became thoroughly familiar with defendant's physical and mental condition. That about ten years prior to the time of the alleged offense, the defendant had a severe

case of smallpox, long spells of sickness, and his kidneys and bladder were affected to such an extent as to cause him great suffering and pains. That he lost his manhood, and his privates shriveled up and wasted away. That it was a physical impossibility for the defendant to have an erection, emission or discharge at the time of the alleged commission of the crime of which he now stands convicted of. That defendant's body and mind was weak from old age and long suffering from sickness. That she is in a position to know and does know that the defendant was not sane at the time of the alleged commission of the offense charged and that from his acts, manners and conversations he was insane at the time of his trial. That she saw the defendant the day before he is said to have committed the alleged crime for which he stands convicted of. That he was shaking his head, talking to himself and acting crazy. That she visited the defendant while in jail prior to the time of his trial and conviction and he looked blank in his expression and talked foolish and hardly recognized her. That defendant is about seventy years of age, broken in health, body and mind. That he is fond of children and always has been, and that the older he gets the more childish he becomes. That he is gentle and kind in his disposition and talks like a child, and there is no harm in him."

By other of said witnesses he offered to prove the same state of facts, in substance. What he states in the bill they would testify all tends to show appellant's insanity as alleged, and his loss of manhood, and his physical and mental condition, as would have been testified by the two witnesses whose proposed testimony is copied, but their testimony was not so full as either Dr. Hill's or Mrs. Devere's. Among these witnesses were his two grown sons by his former wife, Mrs. Devere.

All this testimony was offered as a ground and for the purpose of procuring a new trial. No affidavit was made charging he became insane *after his conviction,* nor seeking a trial therefor. This character of trial is provided for in article 1017 et seq., in our Criminal Procedure. At the time appellant's attorney offered to prove said state of facts before the judge so as to get a new trial for him, the judge himself declined to hear the testimony, but tendered to appellant a jury to try the issue of insanity under said articles of the procedure. Appellant refused to try such an issue before the jury because he was not seeking to show that he had become insane since his conviction. Thereupon the court declined to hear the evidence himself or pass upon the question so as to determine whether or not he would grant a new trial.

The proffered testimony might not have been what is originally termed newly discovered testimony. But if he was insane as alleged, surely he could not be held to have known it, so as to plead insanity, and introduce such evidence when he was tried. But whether it could be called newly discovered testimony or not, it certainly set up such a state of facts as undoubtedly called for an investigation of the question and the hearing of the testimony of these witnesses to determine whether

he was insane when tried. If the judge had heard the testimony, and any other offered by the State, and had held that appellant was not insane when tried, and had overruled the motion for a new trial on that ground, a different question would be presented, but he did not do this. He refused to hear or consider the testimony, and to pass on the issue at all. We think it was undoubtedly his duty to have heard the testimony himself and pass upon the question before and when acting on the motion for a new trial.

Our law is clear (art. 39, P. C.) that, "No act done in a state of insanity can be punished as an offense. No person who becomes insane after he committed an offense shall be tried for the same while in such condition." Surely if appellant was insane when he committed the alleged offense and continued so and was insane at the time he was tried, and these matters were shown to the court afterwards in a motion for new trial, he was certainly illegally tried for an offense for which he could not be punished.

The court has made a very full and lengthy explanation to appellant's bill presenting these questions. It is unnecessary to quote or state it in full; it explains various things, and the judge's opinion about matters other than what we·have stated or discussed. But the fact is clear from the bill, and his explanation, that he himself refused to hear the testimony on the matters we have mentioned, alleged in the motion and affidavits, but he wanted appellant to have a jury and required him to try the issue of insanity before a jury, the effect of which would have been to have failed to pass at all on the question of whether or not appellant should be entitled to a new trial because he was insane when tried. If, under that condition of affairs, a jury had been empaneled and found appellant was insane at that time,—had become insane after he was tried—not when he committed the offense, nor when he was tried,—all further proceedings, even on the motion .for a new trial, would have been suspended and the appellant would have been sent to the insane asylum. If, however, the jury had found that he was not insane at the time when the motion for a new trial was acted upon, and had not become insane after he was tried, that still would not have passed on the question of whether he was insane when he committed the offense, if he did, nor when he was tried, and in no way would the verdict of the jury solve the question put up to the court, and which the court should have passed upon and acted upon without reference to any such proceeding before a jury.

It may be shown upon a full trial that appellant committed the crime alleged, and that he was not insane at that time, and not insane when tried, but under the conditions shown, neither in law nor in justice, can we permit this judgment of conviction to stand,·but must reverse and remand this cause, which is hereby ordered.

Reversed and remanded.

*Reversed and remanded.*